UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION - BAY CITY

IN RE:

    TRISH ENTERPRISES, LLC,               Case No. 12-21729-dob
                                                                  Chapter 11 Proceeding
            Debtor.                           Hon. Daniel S. Opperman
_____/

Opinion Regarding Remaining Relief Requested in Kilwins' Motion for Relief from Automatic
Stay and to Abstain in Favor of State Court Litigation Under 28 U.S.C. § 1334(c)

Introduction

The Debtor operates a store in the Mackinaw Crossings Mall in Mackinaw City. Until February, 2012, tenants at this location sold products licensed by Kilwins Chocolates Franchise, Inc. ("Kilwins") for 16 years. Shortly after the Debtor was formed on February 14, 2012, it signed a Lease for the Crossings store, and was named a Defendant in a lawsuit filed by Kilwins. Kilwins requests that this Court lift the automatic stay to allow the state court action to continue and to abstain from hearing related issues in the state court action.

To better understand this case, the Court briefly outlines events that occurred prior to the Debtor's May 24, 2012, Voluntary Petition.

Kilwins is a franchisor and for many years had certain franchise agreements with Karl Berakovich, Georgia Marina Corporation ("Georgia Marina"), and Erik Berakovich. The Debtor's member, Trisha L. Berakovich, is the wife of Erik Berakovich, and daughter-in-law of Karl Berakovich. Until recently, Georgia Marina was a franchisee in good standing with Kilwins, and operated Kilwins stores in Northern Michigan. Erik Berakovich operated a store on Mackinac Island. This relationship gradually soured such that one of the agreements was terminated. As a result, Karl Berakovich and Erik Berakovich by virtue of their close relationship to Georgia Marina,

1

were required to not compete with Kilwins. In order to enforce its rights, Kilwins filed a lawsuit against Georgia Marina, Karl Berakovich, and Erik Berakovich with the Emmet County Circuit Court in 2011. This lawsuit took the usual course of action for litigation of this nature and appeared resolved by way of mediation. In early 2012, Erik Berakovich contacted Courtyards of Mackinaw LLC ("Courtyards"), the landlord of Mackinaw Crossings. Through discussions with Erik Berakovich, and subsequently Trisha Berakovich, an existing lease for the aforementioned store was terminated and the Debtor entered into a new lease with Courtyards. Kilwins soon learned of this termination and new lease, and added additional counts to its complaint against the Debtor and Trisha Berakovich. Subsequently, Kilwins filed a motion for summary judgment on April 25, 2012, and the Emmet County Circuit Court conducted a hearing on the Kilwins motion on May 17, 2012. On May 17, 2012, the Emmet County Circuit Court, in a bench opinion, voided the lease between the Debtor and Courtyards. In its bench opinion, the Emmet County Circuit Court stated it would issue a written opinion detailing the reasons for its decision. The Debtor filed its Chapter 11 petition with this Court on May 24, 2012, and the Emmet County Circuit Court signed an order granting the relief consistent with its bench opinion on May 29, 2012.

On May 31, 2012, Kilwins filed a motion for relief from stay and for abstention. This Court conducted a series of hearings on Kilwins' Motion on June 14, 2012, and June 15, 2012, and issued a bench opinion on June 18, 2012, partially granting Kilwins' motion to lift automatic stay. As a result, the automatic stay was lifted to allow the Emmet County Circuit Court to complete its written opinion as stated at its May 17, 2012, bench opinion.

The Emmet County Circuit Court issued its written opinion on August 7, 2012. Pertinent portions of that opinion are as follows:

> This case arises from franchise agreements between Plaintiff Kilwin's Chocolates Franchise, Inc. (KCF), and Defendants Georgia Marina Corporation (GMC) and Erik Berakovich (Erik). KCF seeks summary disposition under MCR 2.116(C)(10). For

2

the reasons set forth below, summary disposition is granted in part and denied in part.

**1.     Background**

KCF is the owner and franchisor of the "Kilwin's" branch of candy stores. These stores sell chocolate, fudge, candy, ice cream, nuts, beverages and other edible products. Kilwin's stores are primarily located in Michigan and Florida, but there are Kilwin's stores operating in several other states as well.

GMC is a company owned by Erik's father, Karl Berakovich (Karl). There were three written franchise agreements between the parties: (1) the Crossings Agreement between KCF and GMC dated September 1, 2004 for a Kilwin's store at 176 South Huron Street, Mackinaw City, Michigan (Crossings Shop); (2) the Central Agreement between KCF and GMC dated October 31, 2005 for a Kilwin's store at 226 East Central Avenue, Mackinaw City, Michigan (Central Shop); and (3) the Island Agreement between KCF and Erik dated January 30, 2009 for a Kilwin's shop at 7388 Main Street, Mackinac Island, Michigan (The Island Shop).

The obligations of GMC under the Crossings Agreement were personally guaranteed by Karl. The obligations of GMC under the Central Agreement were personally guaranteed by both Karl and Erik. By their personal guaranties, Karl and Eric [sic] agreed to be "personally bound" by the noncompete and nondiversion covenants in the Franchise Agreements. Eric [sic] was the manager of both the Crossings Shop and the Central Shop for GMC.

On January 29, 2010, Erik informed KCF that he and GMC planned to sell the Crossings Shop and the Island Shop to a third party, and that the buyer was intending to operate competing retail stores offering fudge, chocolate, candy and ice cream under another brand name. KCF filed suit in this Court, alleging that the proposed sales would violate provisions of the Crossings and Island Agreements. The Court issued a temporary restraining order against the proposed sales, which was not contested by Defendants. Apparently the plans for these sales were dropped.

Further issues arose between the 2010 season and the 2011 season. One issue involved installation of point-of-sale cash registers (POS devices). Another issue appears to have been Erik's involvement in managing the Central and Crossings shops. In addition, Erik told KCF that he wanted to close the Island Shop, and that his wife, Trisha Berakovich (Trisha) intended to open a dress shop at that location for the summer of 2011.

These issues were addressed in two written agreements, both dated March 31, 2011: (1) a "Settlement Agreement", whereby GMC agreed to install POS devices at the Central and Crossings Shops and KCF agreed to "not object" to GMC's designation of Erik as manager of the shops; and (2) a "Termination Agreement", whereby KCF

3

agreed to terminate the Island Agreement based upon Erik's representation that his wife wished to open a dress shop at that location.

In the summer of 2011, instead of a dress shop, Defendant, A.J. Velvet, Inc., opened a store offering candy, fudge and ice cream at the location of the former Kilwin's shop on Mackinac Island. Defendants maintain that A.J. Velvet, Inc., is solely owned by Trisha. She was a former employee of GMC. She worked at both the Crossings and the Central Kilwin's shops. Trisha also worked at the Island Kilwin's shop owned by Erik.

KCF has learned that Erik made fudge for the Velvet shop at the Crossings Kilwin shop. He also had fudge made for the Velvet shop by other employees at the Crossings shop. Erik testified that fudge made at the Crossings Kilwin's shop was supplied to the Velvet shop "probably every day or every other day."

Erik provided other products to the Velvet shop from the Kilwin's shops, including caramel corn, chocolate, apples for caramel apples, and dipped chocolate products such as pretzel sticks.

These products were made with the proprietary recipes of KCF, and were provided to the Velvet store at no charge. Thus, GMC did not pay royalties owed to KCF on the sale of these products.

Erik also worked at the Velvet shop from time to time. He took money from the Velvet shop and deposited it in the bank. He waited on customers, sold ice cream and fudge, rang up sales on the cash register and ran reports.

In addition to his active involvement in running the Velvet shop, as manager of the Crossings and Central Kilwin's shops, Erik also used those locations to promote the Velvet shop by distributing discount cards. These cards, placed by Erik at the cash register at the Crossings and Central shops, offered customers a 15 percent discount for purchases at the Velvet shop.

KCF brought this suit on August 31, 2011 against Erik, Karl, Trisha and GMC. Since then, KCF has amended its complaint twice. The Second Amended Complaint includes 16 counts. Added Defendants are "Trish Enterprises, LLC, a new entity formed on February 14, 2012; Courtyards of Mackinaw, LLC (Courtyards) which is the landlord for the Crossings shop premises; and Richard S. and Dewi K. Goodrich, who allegedly claim an interest in the furniture, fixtures and equipment (FF&E) for the Crossings and Central shops.

Defendants have filed a four-count counterclaim. Courtyards has filed a cross claim against Trisha and Trish Enterprises, LLC, seeking possession of the Crossings store premises. KCF seeks summary disposition as to all counts of its complaint, and against the claims of Defendants in the counterclaim. The Court will address the

4

various claims below.

. . .

**4. Counts 6 & 7**.

Counts 6 and 7 deal with the lease for the Kilwin's shop at the Mackinaw Crossings shopping center. Courtyards is the landlord for the Crossings shop. The Crossings Agreement includes a provision in Section 14.4, in the nature of a right of first refusal, giving KCF the right to take over the lease for the Crossings shop from GMC in the event of termination of the Crossings Agreement. In Count 6, KCF seeks specific performance of this agreement. In Count 7, KCF seeks a declaration that a "new lease" between the Courtyards and Trish Enterprises dated February 14, 2012 is invalid.

While GMC agreed to transfer the Crossings lease to KCF upon termination of the Crossings Franchise Agreement, the lease with Courtyards for the Crossings store has not been held by GMC for some time. Instead, when the Crossings Agreement was terminated on October 6, 2011, the lease for the Crossings shop was held in Erik's name as tenant. There is evidence submitted by Defendants indicating that KCF knew of this. Since GMC was not the tenant when the franchise agreement was terminated, and there are fact questions concerning KCF's knowledge of and/or acquiescence in this state of affairs, summary disposition to specifically enforce GMC's promise to assign the Crossings lease is denied.

With respect to the request for declaratory relief in Count 7, the Affidavit of Sarah Grant, property manager for the Mackinaw Crossings Mall, sets forth the following facts concerning how the "new lease" with Trish Enterprises was obtained. Grant states that in January and February of 2012, the lease for the Kilwin's Crossings shop was in Erik's name, because back in 2006 Erik misrepresented that he had purchased the Kilwin's franchises in Mackinaw City from his father.

Grant's Affidavit further states:

> "On or about February 13 or 14, 2012, EB (Erik) contacted me and told me that the parties to the lawsuit, which I understood to include EB and the Kilwin's franchisor, had participated in a mediation process and that EB had "won," and that all of the issues had been resolved in his favor, except that he was limited by a covenant not to compete which prevented him from operating a candy shop in Mackinaw City during 2012. EB represented that in light of the settlement of all the issues in his favor, he wanted to terminate the existing lease and proposed that Courtyards enter into a new lease with his wife, TB (Trish) who had just formed a new entity, Trish Enterprises, LLC."

5

Grant's Affidavit establishes that Erik did not tell her that KCF was claiming a right to the Crossings store space, and further states:

> "Had I known that the representation regarding the status of the litigation was false and that there continued to be issues in dispute regarding the Kilwin's store space, I would not have agreed to terminate the 2006 lease (which was obtained by EB through prior misrepresentations), and would not have entered into the lease with Trish Enterprises, LLC."

Finally, Grant's Affidavit indicates that all negotiations regarding the "new lease" with Trish Enterprises were conducted with Erik. None of the material allegations in the Grant Affidavit are controverted.

Defendants have made a general assertion of prematurity in response to the motion for summary disposition. A party who opposes summary disposition on the ground that discovery is incomplete must at least assert a factual dispute and support that assertion with some evidence. *Bellows v McDonalds, 206 Mich App 555, 561; 522 NW2d 707 (1994)*. Defendants have not done this.

In their Answer to Count 7, Defendants admit that on February 14, 2012, two days after a court-ordered mediation, Trisha caused Trish Enterprises to be formed; that on the same day, Trish Enterprises entered into the lease with the Crossings; and that the next day, Erik cancelled his lease for the Crossings location.

Defendants can not and do not claim that the dispute regarding the Crossings lease was "resolved" by the mediation session in February. Defendants can not and do not claim that the mediation "settled all the issues in Erik's favor". Yet by Ms. Grant's uncontroverted Affidavit, Erik made these representations as positive assertions to induce her to issue the "new lease" in favor of Trish Enterprises.

Erik's admitted involvement in securing a lease for the competing business of Trish Enterprises is a clear violation of the noncompete provision in the Central Agreement which Erik guaranteed. It is also a clear violation of the noncompete provision in the Island Agreement. That Agreement was terminated by the Termination Agreement on March 31, 2011, but Erik specifically agreed therein to honor his noncompete obligation in Section 16.3 of the Island Agreement. Thus he was bound by the Island noncompete covenant until March 31, 2012.

The noncompete language in Section 16.3 of the Island Agreement obligated Erik "for a continuous uninterrupted period of twelve (12) months from the date of . . . termination" to not "directly or indirectly . . . engage in, or have any interest in" a competing business "within a five (5) mile radius of any (other Kilwin's shop)". The Crossings location is within five miles of the Central Kilwin's shop. Accepting for purposes of this opinion Defendant's claim that Trisha is the sole owner of Trish

6

Enterprises, LLC., this limited liability company was formed during her marriage to Erik. It is marital property, so Erik has an interest in this competing business. Also, as indicated above, he was personally engaged in this competing business by negotiating the lease for the Crossings location with Courtyards.

So by his involvement in securing the new lease in February of 2012, Erik was unquestionably violating his noncompete covenant. Since he previously held the Crossings lease in his own name, the new lease is a sham transaction designed to thwart the rights of KCF. It remains to be seen whether Erik's conduct in connection with the new lease constitutes actionable fraud, but it is clear and beyond dispute that the new lease is the product of Erik's deception and the violation of his noncompete agreements with KCF.

An action for declaratory relief is equitable in nature. *Gelman v Fireman's Fund, 183 Mich App 445, 449-450; 455 NW2d 328 (1990)*. The powers of this Court acting in equity are "broad and sweeping". *Keiffer v. VanLeeuewn, 355 Mich 430, 436; 94 NW2d 793 (1959)*. When a court of equity acquires jurisdiction, "it molds its relief according to the character of the case" and "will do what is necessary to accord complete equity and conclude the controversy." *Walworth v Wimmer, 200 Mich App 562, 564; 504 NW2d 708 (1993)*. It is maxim that equity regards and treats as done what in good conscience ought to be done. *Kent v Klein 352 Mich 652, 658; 91 NW2d 11 (1958)*.

What ought to be done here is to void the new lease, as it is the product of Erik's clear violation of his covenants with KCF. To afford equity to KCF, Trish Enterprises can not be permitted to benefit from Erik's improper actions. In voiding this lease, the Court does not direct the subsequent conduct of the landlord, Courtyards. It may choose to lease the premises again to Trish Enterprise, or to lease the premises to KCF, or to lease the premises to a third party. But due to the clearly improper behavior of Erik, the Court grants summary disposition to KCF as to Count 7, declaring the February 14, 2012 lease with Trish Enterprises to be void.

. . .

**6. Counts 10 & 11**.

Counts 10 and 11 allege tortious interference. Count 10 alleges this with respect to Erik, Trisha and A.J. Velvet, Inc., as to the operations of the Velvet shop. Count 11 alleges that Erik, Trisha and Trish Enterprises committed tortious interference in connection with the operations of the new shop at the Crossings.

The elements of this claim are an existing contract, a breach of the contract, proof that the defendant, a third party, instigated the breach, and that this was done without justification. *Dassance v Nienhuis, 57 Mich App 422; 225 NW2d 789 (1975)*.

This Court has ruled in connection with Counts 2 and 3 that the actions of Erik, as manager of the Crossings and Central shops for GMC, caused GMC to violate its nondiversion and noncompete covenants. However, since Erik did this as manager of the stores for GMC, this is not interference with the contracts by a third party.

With respect to the allegations in Count 10 against Trisha, her deposition testimony does not establish that she was familiar with all the covenants and other terms of the Franchise agreements binding her husband. Her testimony was that she knew he "wouldn't be able to open his own candy store" and "[t]hat's all I know." Thus, KCF has not established facts showing it is entitled to summary dispositions on its tortious interference claim against Trisha.

KCF's motion and brief fail to explain how or provide undisputed facts which show that the contracts in question, i.e. the Crossings Agreement and the Central Agreement, were breached due to improper interference by a third party. The position of KCF, which Defendants have conceded, is that those agreements were both terminated effective October 6, 2011. While GMC and Karl have post-termination obligations, KCF's motion and brief do not identify breaches caused by other Defendants. For these reasons, summary disposition as to Counts 10 and 11 is denied.

After the entry of an Order consistent with the Emmet County Circuit Court's opinion, Kilwins renewed its motion for lift of automatic stay and for abstention. The Court conducted a hearing on this renewed motion on September 6, 2012, and took this matter under advisement.

<u>Jurisdiction</u>

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157, 28 U.S.C. § 1334, and E.D. Mich. LR 83.50. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G) (motions to terminate, annul, or modify the automatic stay.)

Analysis

Abstention

11 U.S.C § 1334(c)(2) provides:

(c)(2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

Under 28 U.S.C. § 1334(c)(2), a bankruptcy court must abstain when the following six requirements are satisfied: (1) the motion is timely filed; (2) the proceeding is based upon a state law claim or state law cause of action; (3) the claim or cause of action is related to a bankruptcy case, but did not arise in or under the bankruptcy case; (4) the only basis for original jurisdiction in federal court is the bankruptcy filing; (5) the state law claim or cause of action is the subject of an action that is commenced in a state forum of appropriate jurisdiction; and (6) the state court action can be timely adjudicated. 28 U.S.C. § 1334(c)(2). *Lindsey v. O'Brien, Tanski, Tanzer and Young Health Care Providers on Conn. et al. (In re Dow Corning Corp.)*, 86 F.3d 482, 497 (6th Cir. 1996); *accord Transamerica Fin. Life Ins. Co. v. Merrill Lynch & Co., Inc.,* 302 B.R. 620, 627 (N.D. Iowa 2003).

Applying these elements to the instant case, there is no question that Kilwins' motion was timely filed because it was filed within one month of the Debtor's petition, and renewed shortly after the Emmet County Circuit Court written opinion. Second, the proceeding in the Emmet County Circuit Court, which addresses the enforceability of a lease between the Debtor and Crossings, is clearly a state law claim or state law cause of action. As to the third element, the claim is related

9

to this bankruptcy case, but does not arise from the Bankruptcy Code. As for the fourth factor, the only basis for the jurisdiction of this Court is the Chapter 11 petition filed by the Debtor. Stated differently, the claims of Kilwins and the defenses to the claims of Kilwins do not have any original federal court jurisdiction. The fifth element is likewise resolved in favor of Kilwins in that the claim is a state law claim that was commenced in the state court system. Finally, as evidenced by the Emmet County Circuit Court opinion, this claim has either been already adjudicated or the remaining claims can be timely adjudicated.

For these reasons, the Court concludes that 11 U.S.C. § 1334(c)(2) dictates that this Court abstain from hearing these claims.

Motion for Relief From Stay

Kilwins also requests that this Court lift the automatic stay pursuant to 11 U.S.C. § 362 and cites the recent Sixth Circuit Case of *In re Dominic's Restaurant of Dayton, Inc. v. Mantia*, 683 F.3d 757 (6th Cir. 2012). In *Dominic's*, an individual named Dominic Mantia opened an Italian restaurant and operated it for decades with his son and daughter-in-law, Dick and Anne Mantia. Although both the father and son have since died, Ms. Mantia continues to market sauces and other products under the name of "Dominic's Foods of Dayton". One of Dominic Mantia's granddaughters, Christie Mantia, sold her interest in her grandfather's business and then entered into a transaction with Reece Powers, III and Harry Lee. These individuals wanted to bring back the original Dominic's restaurant and, to that end, created a business called Dominic's Restaurant, Inc. Dominic's Foods and Anne Mantia brought an action in Federal District Court claiming trademark infringement and dilution under federal law, as well as various claims under state law. The plaintiffs obtained a temporary restraining order and a preliminary injunction hearing was then scheduled.

10

Shortly after the issuance of the temporary restraining order, the plaintiffs filed a motion to hold the defendants in contempt, and the District Court broadened the temporary restraining order and rescheduled the preliminary injunction hearing. Shortly thereafter, plaintiffs filed a second motion for contempt claiming a violation of the second temporary restraining order. That motion was denied because the District Court found that the restaurant was closed and the registration of Dominic's Restaurant was withdrawn. The Federal District Court litigation then continued for approximately two years and a default judgment was entered against various defendants. At least one of these defendants, Mr. Powers, filed Chapter 13 in response to a show cause order. Mr. Powers also claimed that it was improper for the District Court to continue the contempt proceedings against him because he had filed bankruptcy. The District Court disagreed with his assessment of the extent of the automatic stay and continued the injunction against him as to the use of recipes and other products associated with the name, Dominic's Foods.

The Sixth Circuit Court of Appeals upheld the determination of the Federal District Court, stating that the automatic stay pursuant Section 362, while broad, does not apply in all cases, most notably, the tortious use property of the Debtor. Further, the Sixth Circuit Court of Appeals held that Section 362 cannot be read to prevent the injunctive relief sought by the plaintiffs in the Federal District Court action. As stated by the Sixth Circuit: "Because this matter involves Powers's use of the restaurant to commit a tort, specifically a tort of trademark and service mark infringement, application of the automatic stay would permit Powers to continue to commit this tort. Powers's commission of a tort is not protected by the Bankruptcy Code." *Id*. at 761 (citations omitted).

Applying the *Dominic's* rationale to this case, the Emmet County Circuit Court has held that the actions of a non-debtor, namely Erik Berakovich, are a clear violation of his covenants not to

11

compete. Although there is the distinction of a trademark infringement versus a covenant not to compete, the underlying concept, the tortious use of property, remains in both cases. Moreover, the Court does note that the Debtor in this case is one step removed from the alleged tortfeasor in the *Dominic's* case, but this issue is not significant enough for the Court to not follow the *Dominic's* holding.

The Court also notes that a distinguishing feature between *Dominic's* and the instant case is that the State Court has not formally yet ordered the Debtor to be evicted from the property in question. To the extent that the automatic stay prohibits that action, the Court lifts the automatic stay to determine the exact remedy that the State Court believes appropriate in these circumstances.

In reaching this conclusion, this Court notes that all parties take the significant and substantial risk that the appellate process is not completed at the State Court level. By way of example, Kilwins takes the risk that the decisions in its favor will be reversed at a higher court level and will then face the payment of significant damages to the Debtor. Likewise, the Debtor may have additional claims made against it if it continues in possession of the Crossings property.

For the reasons stated in *Dominic's*, the Court concludes that the automatic stay pursuant to 11 U.S.C. § 362 should be modified, as requested by Kilwins.

Counsel for Kilwins is directed to draft an Order consistent with this Opinion and obtain approval of counsel or to present an Order consistent with the rules of this Court.

cc: Courtyards of Mackinaw, LLC

**Signed on October 02, 2012**

                                                    **/s/ Daniel S. Opperman**
                                                    **Daniel S. Opperman**
                                                    **United States Bankruptcy Judge**